**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Guy Greene, *formerly known as* Ozhawaaskoo Giishig, | Case No. 18-cv-428 (DWF/DJF) |
| Petitioner, | |
| | **REPORT AND RECOMMENDATION** |
| v. | |
| Jodi Harpstead, Tim Walz, Keith Ellison, and Kevin Moser, | |
| Respondents.[1] | |

Over four years ago, petitioner Guy Greene, a client of the Minnesota Sex Offender Program ("MSOP"), filed a petition for a writ of habeas corpus challenging the legality of his civil commitment (ECF No. 1). Since that time, this action has been stayed during the pendency of *Karsjens v. Piper*, Civil No. 11-3659 (DWF/TNL), pursuant to the Order of the Chief Judge of the District of Minnesota, *see* (Fourth Amended Order (ECF No. 4)); (Fifth Amended Order (ECF No. 6)). The stay has now been lifted (ECF No. 12) and Mr. Greene has filed a request that the Court not dismiss this action for failure to prosecute, which indicates his intent to continue pursuing his claims (ECF No. 9). Because the stay has now been lifted, this matter is before the undersigned United States Magistrate Judge pursuant to a general assignment made in accordance with the provisions of 28 U.S.C. § 636 for review of Mr. Greene's: (1) Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 1); (2) Motion to Amend Petition for Writ of Habeas Corpus (ECF No. 5); (3) First Amended Petition (ECF No. 5-1); and (4) Motion to Appoint Counsel (ECF

---

[1] Upon taking office, Jodi Harpstead, the current Commissioner of the Minnesota Department of Human Services, Tim Walz, the current Governor of Minnesota, and Keith Ellison, the current Minnesota Attorney General, were substituted as respondents to this action. *See* Fed. R. Civ. P. 25(d).

No. 10), all pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts.

Upon careful consideration, the Court concludes that each of Mr. Greene's claims is either not viable on habeas review, untimely, or unexhausted. Accordingly, the Court recommends that Mr. Greene's habeas petition be denied, his motion to amend the petition be denied, his motion for appointment of counsel be denied, and this matter be dismissed without prejudice.

## BACKGROUND

### A.     Civil Commitment

Anoka County first petitioned the state district court to civilly commit Mr. Greene as a psychopathic personality in December 1992 and the court denied the petition in 1993. *In re Commitment of Giishig*, No. A07-0616, 2007 WL 2601423, at *2 (Minn. Ct. App. Sept. 11, 2007), *review denied* (Minn. Nov. 13, 2007).[2] Over ten years later in December 2005, Sherburne County petitioned the state district court to commit Mr. Greene as a sexually dangerous person (SDP) and as a person with a sexual psychopathic personality (SPP) after Mr. Greene was convicted of and served time in prison for additional criminal offenses and was alleged to have engaged in more sexually deviant behavior, including allegations that he sexually abused his then-girlfriend's children in 2001 and assaulted a female corrections officer in 2004 when he was in custody on charges stemming from his assault on a different girlfriend, who was eight-months pregnant at the time. *Id*. at *3-5. Following a hearing, the state district court concluded that Mr. Greene met the statutory criteria for commitment as an SDP as defined in Minn. Stat. § 253B.02 subd. 18(c)

---

[2]  Mr. Greene was formerly known as Ozhaawaskoo Giishig. In 2007, he successfully petitioned to change his legal name back to Guy Israel Greene. *See In the Matter of the Application of Ozhaawaskoo Giishig for a Change of Name*, Case No. 09-CV-07-2915 (Carlton County Dist. Ct.).  This Court will refer to petitioner by his current legal name.

(renumbered as Minn. Stat. § 253D.02 subd. 16) and committed him to the MSOP. *Id*. at \*8. The state district court subsequently ordered an indeterminate commitment following a hearing on MSOP's 60-day treatment report. *Id.* at \*9.

In response, Mr. Greene filed a motion for a new trial, amended findings, and relief from judgment, arguing that the state was collaterally estopped from committing him because there was no new evidence of sexual behavior that would support commitment since the court dismissed the state's first commitment petition in 1993. *Id.* The state district court denied Mr. Greene's motions and Mr. Greene appealed. *Id.* The Minnesota Court of Appeals affirmed. *Id.* at \*14. The Minnesota Supreme Court subsequently denied Mr. Greene's petition for further review.

In November 2012, Mr. Greene sought post-judgment relief from the civil-commitment order pursuant to Rule 60.02 of the Minnesota Rules of Civil Procedure. *In re Civil Commitment of Giishig*, No A13-0537, 2013 WL 4779093 (Minn. Ct. App. Sept. 9, 2013), *review denied* (Minn. Nov. 26, 2013). In his motion, Mr. Greene argued that there had been a change in circumstances since his initial commitment because the MSOP no longer offered adequate treatment and the March 2011 report on the MSOP by the Minnesota Office of the Legislative Auditor constituted newly discovered evidence. *Id.* at \*1. The district court concluded that Mr. Greene's Rule 60.02 motion was an improper attempt to circumvent the statutory process to petition for discharge from commitment. *Id.* at \*2. The Minnesota Court of Appeals affirmed, and the Minnesota Supreme Court declined further review. *Id.* at \*2.

A review of the publicly accessible state court records system reveals that, in addition to challenging the initial commitment order, Mr. Greene has also petitioned the special review board (SRB) for transfer, provisional discharge, and full discharge from his commitment more than once. In 2011, Mr. Greene petitioned for discharge, provisional discharge, or transfer to a non-secure

3

CASE 0:18-cv-00428-DWF-DJF   Doc. 13   Filed 10/05/22   Page 4 of 18

facility. *Greene v. Jesson*, No. A13-1780, 2014 WL 211394 (Minn. Ct. App. Jan. 21, 2014). The

SRB recommended denying the petition and the commitment appeal panel (CAP) agreed after a

hearing. *Id.* at \*2. Mr. Greene appealed; and the Minnesota Court of Appeals affirmed. *Id.* at \*5.

It does not appear that Mr. Greene petitioned the Minnesota Supreme Court for further review of

that decision.

In 2016, Mr. Greene petitioned the SRB again, arguing, in part, that the MSOP treatment

program was a failure, he was not a danger to the public, and the MSOP was retaliating against

him by refusing to advance him in treatment because he had filed multiple lawsuits against the

program. *See In the Matter of the Civil Commitment of: Ozwahwaasko Giishig n/k/a Guy Israel

Greene*, Appeal Panel File No. AP16-9123, Order (Supreme Court Appeal Panel, October 10,

2017). The SRB recommended that his petition be denied, and Mr. Greene appealed to the CAP.

*Id.* The CAP dismissed Mr. Greene's petition, adopting the recommendations of the SRB in full.

*Id.* at \*5. It does not appear that Mr. Greene appealed that order to the Minnesota Court of Appeals.

Mr. Greene petitioned the SRB for release for at least the third time in April 2019, but he

subsequently withdrew the petition before an evidentiary hearing was conducted. *See Greene v.

Harpstead*, A21-0722, 2021 WL 5442551, at \*3 n.1 (Minn. Ct. App. Nov. 15, 2021).

**B.     Federal Habeas Corpus Claims**

In February 2018, Mr. Greene filed a petition for federal habeas corpus relief pursuant to

§ 2254. (ECF No. 1.) The Court interprets his claims as follows:

> (1)     The Minnesota Commitment and Treatment Act: Sexually Dangerous Persons
>         and Sexual Psychopathic Personalities (the Act), *see* Minn. Stat. § 253D.01 *et
>         seq.*,[3] has no mechanism that would allow committed persons to petition the

---

[3]   Although Mr. Greene was civilly committed under the Minnesota Commitment and
Treatment Act (MCTA), *see* Minn. Stat. § 253B.01 *et seq.*, the Minnesota state legislature
amended the MCTA in 2013 by moving the provisions regarding SDP and SPP commitments to a
new chapter called the Minnesota Commitment and Treatment Act: Sexually Dangerous Persons
and Sexual Psychopathic Personalities, *see* Minn. Stat. § 253D.01 *et seq.*, 2013 Minn. Laws ch.

state courts for relief when there are changes in the law, such as when the Minnesota Supreme Court purportedly established a new standard for commitment in *In re Civil Commitment of Ince*, 847 N.W.2d 13 (Minn. 2014);

(2)   The Act has a punitive purpose and therefore constitutes an unconstitutional Bill of Attainder in violation of Article I, Section 9 of the United States Constitution and Article I, Section 11 of the Minnesota Constitution;

(3)   The Act is unconstitutional, violating the Ex Post Facto Clause of the United States Constitution, the Fifth Amendment prohibition against Double Jeopardy, and Article IV, Section 17, known as the "Single Subject and Title Clause," of the Minnesota Constitution;

(4)   The State of Minnesota—specifically through Dr. Anne Pascucci, a state-employed forensic psychologist for DHS—is objectively unreasonable in its application of Supreme Court case law on the "right to be at liberty;"

(5)   Minnesota is violating the federal "Trust Doctrine" by failing to provide Mr. Greene—who identifies as a Native American Indian—with a higher standard of care than the typical civilly committed person;

(6)   Minnesota's sex offender registration scheme implicates a protected liberty interest, thereby satisfying the "stigma-plus" test;

(7)   Executive Order No. 03-10 suspends the writ of habeas corpus in violation of Article 1, Section 9, Clause 2 of the United States Constitution;[4]

(8)   The fact or duration of Mr. Greene's confinement at the MSOP Moose Lake violates the Fourteenth Amendment for reasons outlined in the March 2011 State Audit Report;

(9)   The conditions of Mr. Green's confinement constitute "cruel and unusual punishment" in violation of his rights under the United States Constitution;

---

49, §§ 1-22 at 210-31.  There are no substantive differences between the two.  *See In the Matter of the Civil Commitment of Edwards*, 933 N.W.2d 796, 798 n.2 (Minn. Ct. App. 2019).  For clarity, this Court will cite to the current statutory provisions even though Mr. Greene's habeas petition also refers at times to the old provisions.

[4]   Mr. Greene mistakenly attributes Executive Order No. 03-10 to former Minnesota Governor Mark Dayton.  This executive order was authored by former Minnesota Governor Tim Pawlenty.  *See* Pawlenty, Tim, *Providing Direction To State Agencies in Relation To Persons Civilly Committed Under Minnesota Law As Having Sexual Psychopathic Personalities Or As Sexually Dangerous Persons*, Exec. Order No. 03-10, (July 10, 2003), https://www.lrl.mn.gov/execorders/eoresults?gov=7&title=&number=03-10&ft=   (last visited Sept. 1, 2022).

(10)    Mr. Greene's court-appointed counsel for his civil commitment proceedings fell below an objective standard of reasonableness by failing to pursue constitutional challenges to the Act;

(11)    Minnesota state courts impermissibly shift the burden onto committed persons to propose less restrictive treatment options when there are none;

(12)    DHS is in violation of state district court orders by failing to provide adequate sex offender treatment;

(13)    Mr. Greene's failure to first exhaust state remedies on the aforementioned federal habeas claims should be excused pursuant to § 2254(b)(1)(B)(i)-(ii) because there is no state corrective process, and the current state process is ineffective to protect his rights.

Furthermore, Mr. Greene's First Amended Petition (ECF No. 5-1), adds the following claim:

(14)    Respondents are violating the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by selecting only a few civilly committed sex offenders for discharge, discriminating against him because of his ethnic background and disability, and violating his federal rights.

Mr. Greene requests, among other things, that his commitment order be declared unconstitutional as applied to him, that a discharge plan be created to allow for his immediate and safe transition back into the community, and that jurisdiction be transferred to the White Earth Tribal Court.  (ECF No. 5-1 at 23-25.)

## ANALYSIS

### A.    Operative Petition

Because Greene filed two habeas petitions under section 2254, the Court first resolves the question of which petition is operative.

Pursuant to Rule 12 of the Rules Governing Section 2254 Cases in the U.S. District Court ("Section 2254 Rules"), "[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."  Because the Section 2254 Rules do not specifically address a scenario such as this

one, in which multiple petitions have been filed, the Court looks to the Federal Rules of Civil Procedure for guidance.

Under Rule 15 of the Federal Rules of Civil Procedure, a party may amend its pleading before trial "once as a matter of course within … 21 days after serving it."  Fed. R. Civ. P. 15(a)(1)(A).  After this 21-day period has elapsed, "a party may amend its pleading only with the opposing counsel's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  However, "the court should freely give leave when justice so requires."  *Id.*

In this case, Mr. Greene filed his amended petition more than 21 days after serving the original petition.  Although the First Amended Petition is therefore not automatically operative, this Court recommends that the Motion to Amend (ECF No. 5) be granted in the interests of justice. *See Becker v. Univ. Neb. At Omaha*, 191 F.3d 904, 907-08 (8th Cir. 1999) ("Unless there is a good reason for denial, such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment, leave to amend should be granted.") (internal citations omitted).  The Court will thus include the claim in Mr. Greene's First Amended Petition in its analysis and recommendations.

**B.      Federal Habeas Claims for Relief**

Having established that the First Amended Petition is the operative pleading, the Court turns now to the petition's substance.  The Court finds that the claims are either: (1) not viable as federal habeas claims; (2) time-barred; or (3) unexhausted.  Each category of claims is addressed below.

1 .      **Habeas Viability**

The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody." *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam).  If a petitioner "is not challenging the validity of his conviction or the length of his detention … then a writ of habeas corpus is not the proper remedy." *Id.*  Four of Mr. Greene's claims—claims (5), (6), (9), and (12)—concern the conditions of confinement, not the fact or the duration of Mr. Greene's confinement. As such, they are not cognizable as federal habeas corpus claims and thus nonviable.

Claim (5) alleges that Mr. Greene—a Native American Indian—is not receiving a higher standard of care at the MSOP than the "typical" civilly committed person in violation of the "trust doctrine." (ECF No. 5-1 at 9-10).  In *Morton v. Mancari*, 417 U.S. 535 (1974), the Supreme Court recognized a "special trust relationship"—characterized as the "trust doctrine"—between American Indians[5] and the federal government, which allows preference to be given to American Indians in certain situations. *Id.* at 553.  The trust doctrine has been extended to protect state action for the benefit of American Indians from challenges under the Equal Protection Clause or civil rights statutes.  *See St. Paul Intertribal Housing Bd. v. Reynolds*, 564 F.Supp. 1408, 1412 (D. Minn. 1983) (citing *Washington v. Fishing Vessel Ass'n*, 443 U.S. 658 (1979)).  The Court need not reach the question of whether the trust doctrine entitles American Indians to a higher level of treatment at the MSOP than non-American Indian MSOP clients, however, because questions regarding the quality—or reasonableness—of treatment fall squarely within the category of the conditions of confinement and are thus outside the realm of cognizable habeas claims.  *See Karsjens v. Lourey*, 988 F.3d 1047, 1051 (8th Cir. 2021) (considering the claim of constitutionally inadequate treatment as a civil rights claim under 42 U.S.C. § 1983).

---

[5] The Court references the phrase "American Indian" as used in the *Morton* decision.

Similarly, claim (9) alleges that Mr. Greene's conditions of confinement at the MSOP are "unsafe" in violation of the constitution (*see* ECF No. 5-1 at 14); and claim (12) alleges that the sex offender treatment at the MSOP is constitutionally inadequate (*see id*. at 18-19). Because these claims clearly concern the adequacy and quality of treatment, they are more appropriately categorized as conditions of confinement claims. As such, they are not cognizable federal habeas claims. *See Karsjens*, 988 F.3d at 1051.

Furthermore, Mr. Greene alleges in claim (6) that being labeled a "sex offender," "predatory offender," and the "worst of the worst" deprives him of a protectible liberty interest in his reputation in violation of the constitution, thereby satisfying the "stigma-plus" test.[6] (ECF No. 5-1 at 10-11.) This claim also lacks viability as a habeas claim because it does not concern the *fact or duration* of Mr. Greene's confinement. *See, e.g.*, *Jones v. McNeese*, 746 F.3d 887 (8th Cir. 2014) (applying the "stigma plus" test in a 42 U.S.C. § 1983 civil rights action); *Zutz v. Nelson*, 601 F.3d 842 (8th Cir. 2010) (same); *Gunderson v. Hvass*, 339 F.3d 636 (8th Cir. 2003) (same).

Because claims (5), (6), (9), and (12) involve the conditions of Mr. Greene's confinement—and not the fact that he is confined or the duration of that confinement—they are not cognizable as federal habeas claims. The Court recommends dismissal of these claims for this reason.

Finally, Mr. Greene appear to assert one or more federal habeas claims that allege violations of both the U.S. and Minnesota Constitutions (*see* ECF No. 5-1 at 5). To the extent any claim rests on alleged violations of state law, that portion of any such claim is also nonviable

---

[6] To satisfy the "stigma-plus" test and rise to the level of a protectible property interest under the United States Constitution, "[t]he loss of reputation must be coupled with some other tangible element." *Gunderson v. Hvass*, 339 F.3d 639, 644 (8th Cir. 2003) (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)).

because federal habeas review is limited to claims that the petitioner is in custody "in violation of

the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

   2.      **Timeliness**

   28 U.S.C. § 2244(d) sets forth a one-year statute of limitations period for petitioners held

pursuant to a state court judgment to seek habeas relief.  That limitation period runs from the latest

of—

> (A) the date on which the judgment became final by the conclusion
> of direct review or the expiration of the time for seeking such
> review;
>
> (B) the date on which the impediment to filing an application
> created by State action in violation of the Constitution or laws of the
> United States is removed, if the applicant was prevented from filing
> by such State action;
>
> (C) the date on which the constitutional right asserted was initially
> recognized by the Supreme Court, if the right has been newly
> recognized by the Supreme Court and made retroactively applicable
> to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims
> presented could have been discovered through the exercise of due
> diligence.

28 U.S.C. § 2244(d)(1).   "The time during which a properly filed application for State post-

conviction or other collateral review with respect to the pertinent judgment or claim is pending

shall not be counted toward any period of limitation."  28 U.S.C. § 2244(d)(2).

   Neither section 2244(d)(1)(B) nor section 2244(d)(1)(C) is relevant to Mr. Greene's

petition: Mr. Greene does not suggest that the State of Minnesota has at any point impeded him

from seeking federal habeas relief,[7] and he does not seek relief pursuant to a federal constitutional

---

   [7]   Although habeas claim (7) alleges that Executive Order No. 03-10 operates as a
suspension of the writ of habeas corpus in violation of Article 1, Section 9, Clause 2 of the United

right newly recognized by the Supreme Court of the United States.  Accordingly, the Court looks to the remaining provisions of section 2244(d)(1)—§ 2244(d)(1)(A) and section 2244(d)(1)(D)—to determine when the one-year limitations period began to run on Mr. Greene's habeas claims.

Under section 2244(d)(1)(A), the Court must determine "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  The Minnesota Court of Appeals affirmed Mr. Greene's order of commitment on September 11, 2007, and the Minnesota Supreme Court denied Mr. Greene's petition for further review on November 13, 2007.  *See In re Commitment of Giishig*, No. A07-0616, 2007 WL 2601423, at \*5 (Minn. Ct. App. Sept. 11, 2007), *review denied* (Minn. Nov. 13, 2007).  Mr. Greene did not file a petition for a writ of certiorari with the Supreme Court of the United States, so the judgment became final on the day that his deadline to do so expired, on February 11, 2008.  *See Jihad v. Hvass*, 267 F.3d 803, 804-05 (8th Cir. 2001).  Mr. Greene commenced this federal habeas proceeding *ten* years after that date—long past the applicable deadline under section 2244(d)(1)(A).  And although Mr. Greene did file a post-judgment motion pursuant to Rule 60.02 of the Minnesota Rules of Civil Procedure in November 2012, *see In Re the Civil Commitment of Giishig*, No. A13-0537, 2013 WL 4779093 (Minn. Ct. App. Sept. 9, 2013), this motion failed to toll the period for seeking federal habeas relief under section 2244(d)(2), because the one-year limitations period established by section 2244(d)(1)(A) had already long ago run by that point.  Thus, for any claim for which the factual predicate was or could have been discovered at the time of his initial commitment proceedings, Mr. Greene's claims are plainly time-barred pursuant to the limitations period of section 2244(d)(1)(A).

---

States Constitution, Greene does not allege that this Executive Order prevented him from timely filing this habeas petition.

Of Mr. Greene's claims for relief that are cognizable on habeas corpus review, the Court finds that three relate entirely to his initial commitment proceedings or otherwise reasonably could have been known to Mr. Greene at the time of the initial commitment proceedings: specifically, the claims that the Act constitutes an unconstitutional Bill of Attainder and violates various provisions of the United States Constitution, including the Fifth Amendment and the Ex Post Facto Clause (claims (2) and (3)), and the claim that Executive Order No. 03-10 impermissibly suspends the writ of habeas corpus in violation of Article I, Section 9, Clause 2 of the United States Constitution (claim (7)). Because the limitations period for these claims is governed by section 2244(d)(1)(A), they are untimely and should be dismissed on that basis.

The factual predicate of Mr. Greene's remaining cognizable habeas claims at least arguably arose after the time of his initial commitment. Because many of these claims relate to the alleged illegality of subsequent proceedings concerning whether Mr. Greene should be transferred or discharged, the factual predicate of those claims could not have been known to Mr. Greene until those proceedings took place. Accordingly, the Court turns to the third basis upon which dismissal of the petition is recommended: failure to exhaust available remedies in the state courts.

### 3.   Exhaustion

Pursuant to section 2254, a federal habeas petition "shall not be granted unless it appears that … (A) the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(A). "A claim is considered exhausted when the petitioner has afforded the highest state court a fair opportunity to rule on the factual and theoretical substance of his claim." *Ashker v. Leapley*, 5 F.3d 1178, 1179 (8th Cir. 1993); *see also Baldwin v. Reese,* 541 U.S. 27, 29 (2004). "Presenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy" this requirement. *Cox v. Burger*, 398 F.3d 1025, 1031 (8th Cir. 2005).

12

In his petition, Mr. Greene contends that he did not fairly present *any* of his pending claims in state court. (*See* ECF No. 5-1 at 4-21.) Indeed, a review of the publicly accessible state court record system reveals that of all of Mr. Greene's habeas claims, he only raised the claim that his civil commitment is barred by the United States Constitution's prohibition against Double Jeopardy in the direct appeal of the initial civil commitment order. *In re Commitment of Giishig*, No. A07-0616, 2007 WL 2601423, at *14 (Minn. Ct. App. Sept. 11, 2007), *review denied* (Minn. Nov. 13, 2007). As noted above, this claim is time-barred pursuant to section 2244(d)(1).[8] There is no hint of Mr. Greene's thirteen other federal habeas claims in either his direct appeal of the initial commitment order, *see id.*, or the appeal of the order denying his petition for discharge, provisional discharge or transfer in 2011, *see Greene v. Jesson*, No. A13-1780, 2014 WL 211394 (Minn. Ct. App. Jan. 21, 2014). Even if Mr. Greene had fairly presented these claims in his appeal of the 2011 CAP order to the Minnesota Court of Appeals, they would nevertheless fail because he did not exhaust his state remedies by petitioning the Minnesota Supreme Court for review. *See, e.g., Latimer v. Smith*, 351 F. Supp. 3d 1218, 1224 (D. Minn. 2018) (In Minnesota, fair presentation requires presentation to the Minnesota Supreme Court.). Similarly, it appears that Mr. Greene did not even appeal the 2017 CAP order to the Minnesota Court of Appeals—let alone petition the Minnesota Supreme Court for further review. *In the Matter of the Civil Commitment of Ozwahwaasko Giishig n/k/a Guy Israel Greene*, Appeal Panel File No. AP16-9123, Order (Supreme Court Appeal Panel, October 10, 2017). For these reasons, the Court cannot conclude that Mr. Greene first fairly presented any of his federal habeas claims—other than his time-barred Double Jeopardy claim—to the state court as required pursuant to 28 U.S.C. § 2254(b)(1)(A).

---

[8] Mr. Greene's other claims that this Court found to be untimely alternatively could be dismissed for lack of exhaustion

Mr. Greene contends in claim (13) that his petition should be excused from the exhaustion requirement because: (1) he received ineffective assistance of counsel; and (2) there is either no state corrective process or the current state court process is ineffective to protect his rights. (*See* ECF No. 5-1 at 19-20.)  A petitioner is excused from first exhausting state court remedies when "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C.  § 2254(b)(1)(B)(i)-(ii). Here, Mr. Greene appears to argue that both exceptions apply.  Mr. Greene's argument fails for the reasons below.

First, Minnesota sets forth a process for civilly committed persons to challenge not only their initial commitments but also their ongoing commitment.  Mr. Greene, in fact, has availed himself of this process multiple times.  Mr. Greene appealed the indefinite commitment order, *In re Commitment of Giishig*, No. A07-0616, 2007 WL 2601423, at *5 (Minn. Ct. App. Sept. 11, 2007), *review denied* (Minn. Nov. 13, 2007), and since that time he has repeatedly petitioned for discharge, provisional discharge, and transfer, *see*, *e.g.*, *In the Matter of the Civil Commitment of Ozwahwaasko Giishig n/k/a Guy Israel Greene*, Appeal Panel File No. AP16-9123, Order (Supreme Court Appeal Panel, October 10, 2017).  Although Mr. Greene did not appeal the most recent order denying his petition for discharge, he has done so in the past.  *See Greene v. Jesson*, No. A13-1780, 2014 WL 211394 (Minn. Ct. App. Jan. 21, 2014).  Mr. Greene may disagree with the outcome of his appeals, but this does not mean there is no process.  Second, the Eighth Circuit has held explicitly that this process is constitutional. *See Karsjens v. Piper*, 845 F.3d 394, 410 (8th Cir. 2017) (concluding that the Minnesota Commitment and Treatment Act is constitutional on its face, in part because it provides "proper procedures and evidentiary standards" for committed persons to petition for a reduction in custody).  This precedent is binding on the Court.

14

The Court construes Mr. Greene's first habeas claim—that there is no mechanism that would allow a civilly committed person to challenge his commitment after a change in the law— as an argument in support of his request to be excused from the exhaustion requirement of section 2254 exhaustion requirement.  Citing *In re Civil Commitment of Ince*, 847 N.W.2d 13 (Minn. 2014), Mr. Greene argues that the existing state court process is ineffective because *Ince* sets forth a new legal standard for civil commitment as an SDP, but Minnesota law does not have a post-conviction analog that would allow him to petition the state courts for this purportedly "new" standard to be applied to his case. (ECF No. 5-1 at 4-5.)

Mr. Greene's interpretation of *Ince* is mistaken.  In *Ince*, the Minnesota Supreme Court considered whether "the factors relevant to the determination that a person is 'likely to engage in acts of harmful sexual conduct' as set forth in *In re Linehan* (*Linehan I*), 518 N.W.2d 609 (Minn. 1994), require clarification or modification." 847 N.W.2d at 17.  After a lengthy analysis, the Minnesota Supreme Court concluded that they did not, reaffirming its previous construction of "likely." *Id.* at 22.  *Ince* did not establish a new standard for courts to determine whether a person meets the statutory definition of "sexually dangerous;" rather, *Ince*, reaffirmed the definition of "sexually dangerous" that has been operative since before Mr. Greene's own civil commitment proceedings in 2006.

Mr. Greene does not offer any other purported examples of changes in Minnesota law, which, if applied retroactively, would affect the fact or duration of his confinement.  Moreover, the Court's jurisdiction is limited to actual cases and controversies ripe for review.  U.S. Const. Art. III.  The Court will not consider a hypothetical change in the law that may never come to pass. *See Minn. Pub. Utils. Comm'n v. F.C.C.*, 483 F.3d 570, 582 (8th Cir. 2007) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed

15

may not occur at all."); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (explaining that the ripeness doctrine requires "a real, substantial controversy between parties having adverse legal interests, a despite definite and concrete, not hypothetical or abstract").

Finally, Mr. Greene alleges—both generally and specifically in claim (10)—that he received ineffective assistance of counsel. (ECF No. 5-1 at 19-20.)  Such a claim is not cognizable as a federal habeas claim, however, because there is no federal constitutional right to counsel in civil commitment proceedings.  *See Favors v. Jesson*, Civil No. 14-3473 (JRT/LIB), 2015 WL 4919969, at *6-*7 (D. Minn. Aug. 12, 2015) (*quoting Beaulieu v. Minnesota Dep't of Human Servs.*, 798 N.W.2d 542, 548 (Minn. Ct. App. 2011), aff'd, 825 N.W.2d 716 (Minn. 2013) ("The Sixth Amendment right to effective assistance of counsel does not apply in a civil-commitment proceeding.")); *see also United States v. Veltman*, 9 F.3d 718, 721 (8th Cir. 1993) (recognizing only a statutory right to counsel in a civil commitment proceeding as opposed to a constitutional right).

Further, Mr. Greene's ineffective assistance of counsel claim does not excuse him from the exhaustion requirement of section 2254.  Minnesota law allows for persons indeterminately committed as an SDP or SPP to seek relief from their commitment pursuant to Rule 60.02 of the Minnesota Rules of Civil Procedure when those claims for relief are not inconsistent with the Act. "Examples of these claims might include a commitment void for a lack of jurisdiction, *ineffective assistance of counsel*, and other limited claims that do not specifically request transfer or discharge." *In re Civil Commitment of Lonergan*, 811 N.W.2d 635, 643 (Minn. 2012) (emphasis added).  Minnesota law thus establishes a process for committed persons to challenge their indeterminate commitments on grounds that they received ineffective assistance of counsel.  Mr. Greene simply did not avail himself of that process.  For these reasons, Mr. Greene's ineffective

16

assistance claim is neither cognizable as a federal habeas claim, nor a basis for excusing him from the exhaustion requirement of section 2254.

**CONCLUSION**

Mr. Greene's federal habeas claims are either: (1) conditions of confinement claims that are not viable as federal habeas claims; (2) time-barred; or (3) unexhausted.  The Court therefore recommends that Mr. Greene's federal habeas petition be denied.  Moreover, because further amendment of the petition appears unlikely to salvage Mr. Greene's claims, appointment of counsel on behalf of Mr. Greene is unlikely to materially benefit either him or the Court.  So, the Court also recommends that Mr. Greene's motion for appointment of counsel be denied.  Mr. Greene's motion requesting that the Court not dismiss this matter for failure to prosecute may be granted, as dismissal is not recommended on that basis, but instead for the above reasons.  Finally, because the Court does not believe the bases upon which dismissal is recommended to be fairly debatable, it is further recommended that a certificate of appealability not be issued in this matter. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**RECOMMENDATION**

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.   Petitioner Guy Greene's motion to amend (ECF No. [5]) be **GRANTED** and the amended petition for a writ of habeas corpus (ECF No. [5-1]) be construed as the operative pleading in this matter;

2.   Mr. Greene's amended petition for a writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. [5-1]) be **DENIED WITHOUT PREJUDICE**;

17

3.      Mr. Greene's motion not to dismiss for failure to prosecute (ECF No. [9]) be

**GRANTED**;

4.      Mr. Greene's Motion for Appointment of Counsel (ECF No. [10]) be **DENIED**;

5.      This matter be **DISMISSED WITHOUT PREJUDICE**; and

6.      No certificate of appealability be issued.

Dated: October 5, 2022                              *s/ Dulce J. Foster*
                                                    DULCE J. FOSTER
                                                    United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).